.(Knox County, O., Common Pleas Court.)
March Term, 1897.

STATE OF OHIO EX REL. CITY OF
MT. VERNON v. THE BOARD OF
COUNTY COMMISSIONERS et al.

*Duty of courts in construing statutes*—
1. It is the duty of courts in the construction of statutes to give full force and effect to all their provisions, if by any reasonable construction of the statutes it can be done.

*Repeals by implication*—
2. Repeals by implication are not favored in law, and such repeals will not be accomplished if the statutes can be fairly recon ciled.

*Where several clauses of a statute irreconcilably conflict*—
3. Where several clauses of a statute irreconcilably conflict, the last in date or local position must prevail, except where the last is obscure and incoherent, and the earlier clear and explicit.

*Right of cities of the second class to one-half the bridge fund*—
4. The provision in sec. 860, Rev. Stats., must yield to the subsequent legislation in the passage of sec. 2824, and under the law as it now stands, cities of the second class may demand one-half the bridge fund raised by taxation on property within the city limits, and it is the duty of the county officials to transfer said portion to the treasury of the city under the demand made therefor by the city.

WICKHAM, J.

On the 24th day of December, 1896, the relator, the city of Mt. Vernon, Ohio, filed its petition in this court in which it sets forth that it is a city of the fourth grade of the second class; that the respondents, the board of county commissioners of Knox county, the auditor and treasurer of said county, are duly elected. qualified and acting officers of said county of Knox.

That at their June session, A. D. 1894, the respondents, the board of county commissioners of said county, levied on each dollar of valuation of taxable property within said county of Knox, for road and bridge purposes, the sum of 1½ mills for the year 1894; that of said levy there was collected and paid into the county treasury for the year 1894, the sum of $20,995.85, of which sum $3,502.97 was collected from the taxable property within the corporate limits of the relator, the city of Mt. Vernon, Ohio; that at their June session, A. D., 1895, the said respondents, the board of county commissioners of said county. levied on each dollar of valuation of taxable property within said county of Knox for road and bridge purposes, the sum of 1½ mills for the year 1895; that in pursuance of said levy there was collected and paid into the county treasury for the year 1895, the sum of $21,490.85, of which sum $3,613.39 was collected from the taxable property within the corporate limits of the relator.

That all of the money so collected and paid into the county treasury in pursuance of said levies of 1894 and 1895, was by said board of county commissioners, set apart. as a bridge fund; that in pursuance of sec. 2824 of the Revised Statutes of Ohio, the city council of relator, at the regular session of said board of county commissioners in June, 1894, demanded of the respondents, the said county commissioners, that one-half the proportion of said bridge fund collected upon the property within the corporate limits of the relator under the levy of the year 1894 should be paid into the city treasury of the relator; that at the regular session of the said board of county commissioners in June, 1895, the said city council of the relator again demanded one-half of the proportion of the bridge fund so collected upon the property within the corporate limits of the relator under the levy of 1895.

That the said respondents, the county commissioners of said county, refused and have ever since refused and now refuse to pay the proportion of said bridge fund so demanded into the city treasury of Mt Vernon, Ohio, and refuse to take any steps necessary to secure the payment of the portion of said fund claimed by the said relator.

Relator further says that under the levy of 1894, there should have been paid into the city treasury the sum of $1,751.48; that under the levy for 1895 there should have been paid into the city treasury the sum of $1,806.6, in all the sum of $3,58.17, and they pray for a writ of mandamus commanding the said respondents to pay into the treasury of the relator the sum of $3,558.17, there to be placed to the credit of the bridge fund of relator.

To this petition the respondents have filed general demurrers, and it is before this court for decision on the demurrers to the relator's petition. The relator claims its right to a portion of the bridge fund raised by taxation of property within its corporate limits under a provision of sec. 2824.

"Provided further, that in all cities of the second grade of the first class, and all cities of the second class one-half the portion of said bridge funds collected upon the property within said cities in all cases where the city council shall demand it, shall be paid into the city treasury, and shall be expended by such city for the purpose of building and repairing bridges."

It will be noticed that the language of this section is clear and unambiguous, and gives to cities of the class therein mentioned the right to demand and receive one-half of the bridge fund collected upon property within such cities. The language is clear and explicit. There is no option resting with the county officials in regard to the transfer of said funds. It gives the city authorities the right to demand, and that demand must be complied with, for "in all cases where the city council shall demand!

it, said portion of said bridge fund shall be paid into the city treasury and shall be expended by such city for the purpose of building and repairing bridges.''

The respondents claim that it shall be optional with the board of county commissioners, upon demand by the city council, to pay a portion of said bridge fund into the city treasury, and that this option is given to the county commissioners by sec. 860, Rev. Stats., as amended and passed February 8, 1894, (91 O. L., 19..) This section reads as follows: "Sec. 860. The commissioners shall construct and keep in repair all necessary bridges over streams and public canals on all state and county roads, free turnpikes, improved roads, abandoned turnpikes and plank roads in common public use, except only such bridges as are wholly in such cities and villages having by law the right to demand, and do demand and receive, part of the bridge fund levied upon the property within the same; and when they do not demand and receive said portion of bridge tax, the commissioners shall construct and keep in repair all bridges in such cities and villages. Provided, that in all cases except counties containing a city of the first grade of the first class, the granting of the demand made by any city or village for its portion of the bridge tax, shall be optional with the said board of commissioners.''

It is the duty of courts in the construction of statutes to give full force and effect to all their provisions, if by any reasonable construction of the statutes it can be done. But the provisions of sec. 860, giving to the county commissioners the option to grant the demand by the city, and the provision of sec. 2824 giving to the city the right to demand and receive, are in hopeless conflict, and no construction that I have been able to give can reconcile them. The right to demand implies the right to receive, and leaves no room for the exercise of an option to the one of whom the demand is made. Prior to the 8th day of February, 1894, the date of the passage of sec. 860 as amended, there was no doubt about the right of a city of the second class to demand and receive a portion of the bridge fund raised by tax on property within its corporate limits; but since the passage of that section, as amended, the right is taken away from cities of the second class unless that section was repealed by implication by the passage of sec. 2824, as subsequently passed May 1, 1894.

It is claimed by counsel for relator that this repeal is effected by implication, as sec. 2824 was the last enacted and the provisions in the two sections are irreconcilable. Repeals by implication are not favored in law, and such repeals will not be accomplished if the statutes can be fairly reconciled. (6 Ohio St., 307; 10 Ohio St., 25; 20 Ohio St., 324; 20 Ohio St., 421.)

But where several clauses of a statute irreconcilably conflict, the last in date or local position must prevail, except where the last is obscure and incoherent, and the earlier clear and explicit. (47 Ohio St., 52, 69, 70.)

Again, if two statutes directly contradict each other, the later statute repeals the earlier by implication. Work v. Massie, 6 Ohio, 503. "A repeal by implication has been effected where two inconsistent enactments have been passed at the same session." Endlich on the Interpretation of Statutes, p. 259.

It is claimed by counsel for the respondents, in argument' that the two provisions are not in conflict, but it is difficult to see how one section of the statute that gives to a municipality the right to demand and receive a certain fund, and the provision of another section of the statute that gives the county commissioners the right to withhold the fund when demanded by the officers of the municipality, can co exist and not be in conflict.

If the county commissioners can withhold a portion of the fund and refuse to pay it over to the municipality it would be unreasonable to provide by statute that a municipality, through its officers, should have a right to demand it. It would be folly to provide by statute that the city should demand, and at the same time say that it should be optional with the officers from whom the fund is demanded whether the demand should be complied with.

The right to a portion of the bridge fund under the present state of the law, either does or does not belong to cities of the second class. If they had the right to the fund, county commissioners have not the authority to deny them this right. If the option to refuse the demand rests with the county commissioners, cities of the second class are not vested with the right to a portion of the bridge fund. The right to demand and receive the fund on the part of cities of the second class, and the right to an option to grant or refuse a demand on the county commissioners, can not co-exist, and from the authorities cited by counsel, and from my own research, I am of the opinion that the provision in sec. 860 must yield to the subsequent legislation in the passage of sec. 2824; and it is my opinion that under the law as it now stands, cities of the second class may demand one-half the bridge fund raised by taxation on property within the city limits, and that it is the duty of county officials to transfer said portion to the treasury of the city under the demand therefor.

It is urged by counsel for the respondents, the county auditor and the county treasurer, that the demurrers should be sustained as to them, for the reason that they are not proper parties to this proceeding. The answer to this would be, they are officers of the county, and have certain ministerial duties to perform involving no judicial discretion. Upon the issuing of a peremptory writ of mandamus, the auditor would be required to draw his warrant upon the treasurer for the amount of the fund to be paid to the city treasurer, and the treasurer would be required to honor the warrant and transfer the fund. This duty of the auditor would make him a proper, and probably a neces-

sary party to this suit. 9 Ohio, 256; 12 Ohio, 116; 7 Ohio St., 327; 43 Ohio St., 311.

The same may be said of the respondent, the county treasurer, 4 Ohio St., 561; 16 Ohio St., 38; 38 Ohio St., 259.

I think the claim of counsel for the respondents that the auditor and treasurer are not proper parties is untenable, and under the views I have indicated, I think the demurrers in this case may be overruled.

W. H. Thompson, City Solicitor, and Critchfield & Devin, Attorneys for Relator.

Ewing & Ewing, Attorneys for Respondents.